**Hobson E. PARKER et al., all the heirs of Earl L. Parker, deceased, Plaintiffs and Appellants,**

v.

**Annie Parker ROLFSON, Defendant and Respondent.**

**No. 13556.**

Supreme Court of Utah.

July 30, 1974.

Jackson B. Howard, of Howard, Lewis & Petersen, Provo, for plaintiffs and appellants.

Leland S. McCullough, Salt Lake City, for defendant and respondent.

HENRIOD, Justice:

Appeal from a summary judgment dismissing a suit to quiet title to real estate. Affirmed with costs to defendant.

On July 16, 1963, Earl L. Parker and defendant, Annie Taylor were married, and signed a nuptial agreement either before or

after such marriage, which said, in part, that after Earl's death, Annie was to have the home for life, "unless she should marry again" in which case she would transfer the home, car and furnishings to Earl's heirs. In October, 1967, Earl died intestate, and his son Norman, (not Annie, statutorily preferred) one of the plaintiffs, was made administrator of the estate. In August, 1969, Norman prepared and filed a petition for approval of final account and decree of distribution, which petition contained the following:

> 5. The decedent married one Annie C. Taylor in July of 1963, the parties entered into an agreement, a copy of which is attached, incorporated and made a part of this petition, and which agreement his widow, Annie C. Parker, has agreed to abide by. The agreement grants to the widow a life estate in the decedent's property, otherwise the entire property is to be distributed to the lineal heirs of the decedent equally.

attaching the agreement thereto. The petition further stated that "the agreement grants to the widow a life estate of the decedent's property, otherwise the entire property is to be distributed to the lineal heirs of the decedent equally."

In September, 1969, the account was approved and the decree distributed the real property to Earl's heirs "subject to the life estate in Annie C. Taylor Parker." Later Annie remarried.

About three and one-half years after the decree the plaintiffs filed a suit to quiet title against Annie. There was no direct attack on the probate proceedings and there was no allegation of fraud, undue influence or other equitable grounds in the quiet title action, except one statement, that may have implied a "mistake," on

someone's part to the effect that the estate "was probated and inadvertently a decree granting the defendant a life estate failed to specify that such life estate was further contingent upon the defendant not marrying."

It is significant that nowhere in the complaint was there any language to the effect that this was a suit in equity, but only that it was a suit to quiet title, together with three other alleged causes of action, namely 1) for unlawful detainer asking treble damages, 2) for conversion of personal property and 3) an injunction and forcible removal, all asking variously for a) damages for rental value, b) judgment quieting title, c) damages for conversion of personalty, d) attorney's fees, e) costs, f) an injunction, and g) a writ of assistance, —all of which adds up, apparently, to a series of legal and/or statutory actions.

This case was not filed in the probate proceedings. There was no direct attack on said proceedings, but only a collateral attack, at best.[1] There was no claim of a clerical error as opposed to a judicial error, the difference in which clearly was pointed up in Richards v. Siddoway [2]—and which difference is quite significant here as it was in that case, whose facts, with minor variables,—seem to be on all fours. The so-called "inadvertence" seems extant in both cases,—and the Siddoway case held it may have been judicial, but not a clerical error, and reversed the granting of a motion to modify a previous judgment.

The main thrust of plaintiffs' argument here is that their lawsuit was an independent action in equity, where all parties were present, and that such an action is authorized under Rule 60(b) [3] collaterally to attack a probate decree on the basis of "inadvertence" on the part of the court three

---

1. Section 75–1–8, U.C.A.1953, states: "An objection to any paper, petition, decree or order in any probate or guardianship matter, for an erroneous or defective statement or determination of any fact necessary to jurisdiction which actually existed, or for an omission to find or state any such fact in such paper, petition, decree or order, is available only on direct application to the same court, or on appeal."

2. 24 Utah 2d 314, 471 P.2d 143 (1970): A case relied upon most heavily by both parties.

3. Rule 60(b) is set out in Siddoway and Utah Rules of Civil Procedure, to which reference is made.

and one-half years before, absent which such "inadvertence," otherwise must be conceded would be subject to the defense of "res judicata," [4] limitation of action, etc.

Plaintiffs also urge that the nuptial agreement should have been incorporated in the probate decree. Difficulty is that they simply asked the trial court to modify the decree by incorporating in it an exhibit,—not introduced by plaintiffs, but by defendant, and not incorporated in the decree by reference. The record here does not reflect what, if any, reason the trial court had in failing to include the agreement reference or otherwise in the decree, if the court, not plaintiffs, so failed without cause, or in decreeing an unconditional life estate to Annie. Many reasons might suggest themselves, such as something said at hearing, maybe a stipulation, maybe an admission, maybe an indication of swapping a dower interest for a life estate,[5] maybe an unrecorded document of transfer or settlement of some kind,—and we cannot second guess what was in the court's mind when the probate decree finally was signed. That is why Mr. Justice Ellett stated in Siddoway that under facts very similar to those here, the omission in a previous decree was a judicial error not subject to modification on motion. The suggestion was made that there might be a situation where an independent action could be pursued under certain facts but we have grave doubts that there was anything remotely suggesting such an independent action under the facts adduced through the discovery procedure in this case,—and we believe the law of the case in the Siddoway case

fully supports the decision of the trial judge here, who also recognized such case in his judgment.

In support of our decision, plaintiffs' case seems to be one to test title to land,— not to reform a probate decree. This is evident from plaintiffs' own pleadings, which do not ask for reformation or other equitable relief, save possibly an injunction not germane to plaintiffs' rather belated claim. Rule 60(b), which plaintiffs suggested as a basis for an independent action, was not pleaded. Whether such a suit would lie in a given case is a matter we need not discuss here, since we think the facts presented to the trial court to be such that we could not apply such a theory to facts pleaded. If there were any "inadvertence" it would have been plaintiffs own, having had a duty to follow several pertinent probate filing-time statutes having to do with correction of errors, both clerical and judicial,—of none of which plaintiffs took advantage,—which appears to be an inattention to the record or chargeable oversight. The plaintiffs not only failed in the above respect, but waited for three and one-half years to contest a document which they no doubt prepared and asked the court to sign,—which certainly constitutes a state of facts justifying a court to exercise its discretion favorably to their opponent.

The trial court's summary judgment is affirmed.

CALLISTER, C. J., and ELLETT, CROCKETT and TUCKETT, JJ., concur.

---

4. "A decree of distribution in probate proceedings after due and legal notice, by a court having jurisdiction of the subject matter, is conclusive as to the fund, property, items and matters covered by and properly included within the decree." In re Rice's Estate, 111 Utah 428, 182 P.2d 111 (1947).

5. It is significant that nowhere is mentioned the dower interest in the probate proceedings, which might suggest undue influence or pressure, or mistake or something else in decreeing an unconditional life estate; we don't know. We presume the court had reason for his decree—which until now was uncontested.